## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| VALERIE PETERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:23-CV-00020-SPM |
| | ) | |
| ROSS DRESS FOR LESS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Strike Plaintiff's Expert Witness

Dr. Matthew Gornet (Doc. 25). The motion has been fully briefed. For the reasons stated below,

the motion will be denied.

### I.    BACKGROUND

This is a personal injury case that was removed from state court. Plaintiff alleges that on

July 6, 2020, she was shopping at a Ross Dress for Less store in Poplar Bluff, Missouri, when she

was struck with an overloaded shopping cart being transported by one of Defendant's employees.

Plaintiff alleges that she suffered serious injuries as a result of this incident.

Pursuant to the Case Management Order, Plaintiff's deadline for disclosing expert

witnesses was July 15, 2023. (Doc. 18). On July 15, Plaintiff's counsel emailed Defendant's

counsel and stated, "We will name Dr. Matthew Gornet as an expert witness in this case, and are

awaiting his expert opinion and report regarding the causation and exacerbation of Ms. Peterson's

injuries." Def.'s Ex. B, Doc. 25-2, at 7. Plaintiff's counsel asked Defendant's counsel if he would

consent to a 45-day extension of time for Plaintiff to submit Dr. Gornet's report, and Defendant's

counsel agreed to a 30-day extension. *Id.* at 5-7. On August 15, Plaintiff's counsel emailed

Defendant's counsel to state that he was still waiting for Dr. Gornet's report; Defendant's counsel responded by stating that Defendant opposed any further extensions regarding Dr. Gornet's report. *Id.* at 1-2. On August 18, Plaintiff's counsel emailed Defendant's counsel with  Dr. Gornet's report, which was in the form of a letter from Dr. Gornet to Plaintiff's counsel *Id.* at 1; Def.'s Ex. C, Doc. 25-3. An email link to various medical records of Plaintiff was also provided.

In his report, Dr. Gornet described his treatment of Plaintiff for neck and low back problems beginning in April 2021, including two surgeries he performed. Def.'s Ex. C. He stated that Plaintiff will require future treatment for her cervical and lumbar spine problems and estimated the costs of the likely treatments. He also stated that it was his opinion that the accident that occurred on or about July 6, 2020, aggravated her underlying degenerative conditions, an opinion he stated was "based on comparing her studies both before and after her accident of 7/6/20, [his] knowledge of treating like or similar patients, review of her medical records from SSM Neurosciences, pain management records from Dr. Boedefeld, records from Mark Rivkin and Dr. Lee's records." *Id.* at 2. Dr. Gornet stated that he was enclosing a copy of his curriculum vitae listing all the publications he has authored; that he did not believe he had testified as a retained expert in any case in court over the last 15 years; that he believed he has testified at trial once or twice a year over the past 5-7 years, but it was for testimony regarding treatment of his patients; that he did not believe he had been paid any money from Plaintiff's counsel's office for testimony in this case; and that the cost of authoring this letter was $1,000.

On September 5, Defendant filed the instant motion to strike Dr. Gornet. Defendant argues that Dr. Gornet should be prevented from giving an expert testimony in this case for two reasons: (1) Dr. Gornet's report was provided late (three days after the expiration of the 30-day extension

the parties agreed to) and (2) the report did not contain the information required by Rule 26(a)(2)(B).

## II.   DISCUSSION

The Court first considers Defendant's argument that Dr. Gornet should be stricken because his report does not comply with the requirements of Rule 26(a)(2)(B). In her response, Plaintiff argues that Rule 26(a)(2)(B) does not apply to Dr. Gornet because he is a treating physician, and that Dr. Gornet's report *does* comply with Rule 26(a)(2)(C), which should apply instead. In its reply, Defendant reiterates its position that Rule 26(a)(2)(B) applies[1] but further argues that even if Dr. Gornet was not subject to Rule 26(a)(2)(B), his testimony should be excluded because Dr. Gornet was never properly disclosed as an expert under any part of Rule 26(a)(2).

Rule 26(a)(2) sets forth the disclosure requirements for expert witnesses whose testimony may be used at trial. "A party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702 ["Testimony by Expert Witnesses"], 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). Rule 26(a)(2) sets forth two categories of expert witnesses. The first category is for witnesses who were "retained or specially employed to give expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony"; those witnesses must provide a written report that contains the following:

(i)     a complete statement of all opinions the witness will express and the basis and reasons for them;
(ii)     the facts or data considered by the witness in forming them;
(iii)    any exhibits that will be used to summarize or support them;
(iv)    the witness's qualifications, including a list of all publications authored in the previous 10 years;

---

[1] To support this position, Defendant also attached to its Reply the July 18, 2023 letter from Plaintiff's counsel to Dr. Gornet asking for his opinion and report, in which Plaintiff's counsel listed the Rule 26(a)(2)(B) requirements and told Dr. Gornet that his report was subject to those requirements. Def.'s Ex. F, Doc. 41-6.

> (v)    a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
> (vi)   a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). The second category is for witnesses who do not fall within the description set forth above; those witnesses are not required to provide a written report, but the disclosure for such witnesses must state:

> (i)    the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
>
> (ii)   a summary of the facts and opinions to which the witness is expected to testify.

Fed. R. Civ. P. 26(a)(2)(C).

The Eighth Circuit recently noted that text of Rule 26(a)(2) "leaves unanswered the question whether a treating physician who will testify as an expert must be disclosed under Rule 26(a)(2)(B) or Rule 26(a)(2)(C)." *Johnson v. Friesen*, 79 F.4th 939, 943 (8th Cir. 2023). After analyzing decisions from other circuits, the Eighth Circuit held:

> [W]e agree with the district court and the above-cited circuit court decisions "that a treating physician[] who is offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment, should be deemed to be one retained or specially employed to provide expert testimony in the case, and thus is required to submit an expert report in accordance with Rule 26(a)(2)."

*Id.* (quoting *Meyers v. Nat'l R.R. Passenger Corp. (Amtrak)*, 619 F.3d 729, 734-35 (7th Cir. 2010); additional internal quotation marks omitted). In the case before it, the Eighth Circuit found that the district court had not abused its discretion in excluding expert testimony from a treating physician where the facts showed that the physician had formed his causation opinion only after his treatment of the plaintiff and after review of materials provided by the plaintiff's attorney:

> In this case, the summary judgment record reflects that Dr. Hess formed his causation opinion after Johnson's attorney wrote requesting Dr. Hess's causation opinion and Dr. Hess spent several months reviewing Johnson's medical records and photographs of the accident the attorney sent him. The summary judgment

record supports the district court's conclusion that Dr. Hess's letter "demonstrates that his causation opinion was not formed during his treatment of [Johnson]." Therefore, the district court did not abuse its wide discretion in determining that Dr. Hess was a prospective expert witness subject to the disclosure requirements of Rule 26(a)(2)(B) and excluding his testimony for Johnson's failure to comply with that Rule.

*Johnson*, 79 F.4th at 943-44. *See also Gruttemeyer v. Transit Auth.*, 31 F.4th 638, 644 (8th Cir. 2022) ("If a treating physician will testify about matters outside the realm of treatment such as causation of a condition, however, disclosure requirements are triggered."); *Martin v. Galla*, No. 22-05007-CV-SW-DPR, 2023 WL 6466390, at *2-*3 (W.D. Mo. Oct. 4, 2023) (applying *Johnson* and finding that where a treating doctor submitted a letter containing opinions regarding causation and prognosis based on a review of the plaintiff's medical records, his life care plans, and records from another doctor, the testimony and causation opinions "go beyond his own observations and treatment of Plaintiff," such that his disclosure needed to satisfy "the more stringent requirements of Rule 26(a)(2)(B)").

Here, it is clear that Dr. Gornet was one of Plaintiff's treating physicians—he describes in his report his treatment of Plaintiff, including performing two surgeries. Plaintiff has also submitted deposition testimony in which Plaintiff states that she was referred to Dr. Gornet by a Dr. Lee after she told Dr. Lee that physical therapy was no longer working, and that no one other than Dr. Lee referred her to Dr. Gornet.[2] Pl.'s Ex. A, Doc. 29, at 5. However, as set forth above, the fact that Dr. Gornet was a treating physician is not dispositive of the question of whether Rule 26(a)(2)(B) applies to his opinions. Instead, the question is whether Dr. Gornet's opinions regarding the cause of Plaintiff's injury, and her future treatment needs and their costs, were

---

[2] In its Reply, Defendant states that Plaintiff was referred to Dr. Gornet through Plaintiff's counsel, but Defendant cites no evidence in support of this assertion.

formed "in the course of providing treatment." *See Johnson*, 79 F.4th at 943. Neither party addresses this question in its briefing or discusses this legal standard.

Based on a review of the record, the Court finds that Dr. Gornet's opinions were, at least to some extent, formed outside of the course of his providing of treatment to Plaintiff. Dr. Gornet's letter was written in response to a letter from Plaintiff's counsel asking him to provide an "expert opinion and narrative report regarding the causation of Ms. Peterson's injuries and treatment following the July 26, 2020 injury at Ross Dress for Less, including any future treatment that she may need." *See* Def.'s Ex. F, Doc. 41-6. Dr. Gornet offered his opinions about specific treatments that Plaintiff will likely require over the next ten years, and offered specific dollar estimates for those procedures—conclusions it seems very unlikely that he reached during his treatment of Plaintiff. For example, he stated that it was more probable than not that "within the next ten years," Plaintiff would require a stabilization from T10 to L3, that "[t]he cost for a posterior fusion from T10 to L3 would be $122,036.00 for surgeon and assistant fees and $189,160.25 for facility fees including implant costs," and that "[a]n additional $5,000.00 of anaesthesia costs would apply as well as $25,000.00 of future imaging costs for the lumbar spine." Def.'s Ex. C, Doc. 25-3, at 2. With regard to his opinion of the causation of Plaintiff's injuries, Dr. Gornet did not indicate when he reached his causation opinion, but he stated that it was "based on comparing her studies both before and after her accident of 7/6/20, [his] knowledge of treating like or similar patients, review of her medical records from SSM Neurosciences, pain management records from Dr. Boedefeld, records from Mark Rivkin and Dr. Lee's records." *Id.* at 2. Def.'s Ex. C, Doc. 25-3, at 2. It is not entirely clear whether Dr. Gornet reviewed those records for purposes of litigation or during the course of treatment. However, in light of the other opinions he offered and the fact that he does not indicate that he reached his causation opinions in the course of treating Plaintiff, the Court

finds that it is more likely than not that he formed these opinions outside the course of providing treatment to Plaintiff. Also weighing in favor of this conclusion is the fact that he was paid $1,000.00 for authoring his report and the fact that Plaintiff's attorney, in requesting the report, informed him that the requirements of Rule 26(a)(2)(B) applied.

For all of the above reasons, the Court finds that Dr. Gornet formed his opinions outside of the course of providing treatment to Plaintiff and thus that he is subject to Rule 26(a)(2)(B). The Court agrees with Defendant that Dr. Gornet's two-and-a-half-page report does not fully satisfy the requirements of Rule 26(a)(2)(B).[3] First, Dr. Gornet's report does not satisfy the requirement that report contain the "the facts or data considered by the witness in forming" his opinions, as required by Rule 26(a)(2)(B)(ii). For example, he states that his opinions are based in part on his review of "medical records" and other "records" from other specific doctors, but he does not state what those records show or how they informed his opinions.[4] Second, Dr. Gornet's report does not satisfy Rule 26(a)(2)(B)(iii), because it does not contain "any exhibits that will be used to summarize or support" his opinions. Third, Dr. Gornet's report does not satisfy Rule 26(a)(2)(B)(iv), because it does not contain his "qualifications" or "a list of all publications authored in the previous 10 years."[5] Fourth, Dr. Gornet's report does not satisfy Rule 26(a)(2)(B)(v), because although Dr. Gornet does provide some vague information regarding his past testimony, he does not provide "a list of all other cases in which, during the previous 4 years,

---

[3] Notably, Plaintiff does not attempt to argue that Dr. Gornet's report complies with Rule 26(a)(2)(B).

[4] This is merely an example of one deficiency in Dr. Gornet's report and is not intended to be a complete statement of the ways in which his report does not comply with Rule 26(a)(2)(B)(ii).

[5] The report mentions that a C.V. is enclosed that would have this information, but Defendant states that no such document was provided to Defendant, and Plaintiff has not shown that it was provided. *See* Def.'s Mot., Doc. 25, at p. 4.

the witness testified as an expert at trial or by deposition.'" Finally, Dr. Gornet's report does not satisfy the Rule 26(a)(2)(B)(vi), because although he states that he does not believe he has been paid any money for testimony in this case by Plaintiff's counsel's office and that the cost of authoring the letter was $1,000, he does not provide "a statement of the compensation to be paid for the study and testimony in the case" that clearly addresses all of the compensation he has been and will be paid for his study and testimony in this case.

For all of the above reasons, the Court finds that Plaintiff did not comply with Rule 26(a)(2)(B) with respect to Dr. Gornet's expert report. The Court also finds that Dr. Gornet's noncompliant report is untimely, having been provided to Defendant three days after their agreed-upon 30-day extension of the deadline for Plaintiff to disclose experts in the Case Management Order.

The Court next turns to the appropriate remedy for Plaintiff's failure to comply with Rule 26(a)(2)(B) and the Court's Case Management Order. "The disclosure mandates in Rule 26 are given teeth by the threat of sanctions in Rule 37." *Vanderberg v. Petco Animal Supply Stores, Inc.*, 906 F.3d 698, 702 (8th Cir. 2018). "When a party fails to provide information or identify a witness in compliance with Rule 26(a) or (e), the district court has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008) (citing Fed. R. Civ. P. 37(c)(1)). "The district court may exclude the information or testimony as a self-executing sanction unless the party's failure to comply is substantially justified or harmless." *Id*. (citing Fed. R. Civ. P. 37(c)(1)). However, "the exclusion of evidence is a harsh penalty and should be used sparingly." *Id.* (quoting *ELCA Enters. v. Sisco Equip. Rental & Sale*s, 53 F.3d 186, 190 (8th Cir. 1995)). Rule 37(c)(1) states that in addition to or instead of the sanction of exclusion of evidence, the court may, "on motion and after giving an

opportunity to be heard," order payment of reasonable expenses and attorney's fees caused by the failure to disclose and may impose other appropriate sanctions. "When fashioning a remedy, the district court should consider, *inter alia,* the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Wegener*, 527 F.3d at 692*.* (citing *Sellers v. Mineta*, 350 F.3d 706, 711-12 (8th Cir. 2003)).

Here, after consideration of the relevant factors, the Court does not find that the circumstances warrant the harsh sanction of exclusion of all or part of Dr. Gornet's testimony. As to the first factor, Plaintiff does not actually state the reason for her noncompliance; it appears to have been a combination of misunderstanding of the applicable law and a failure to ensure that Dr. Gornet provided the relevant information by the applicable deadline. This factor weighs slightly in favor of exclusion. As to the second factor, the surprise and prejudice to Defendant appears to be minimal, weighing against exclusion. This is not a situation in which Plaintiff is attempting to surprise Defendant with new expert testimony on the eve of trial, nor is it even a situation in which Defendant has already deposed Plaintiff's expert and disclosed its own experts based on inadequate information and will have to revisit those steps. Instead, it is a situation in which Plaintiff produced a deficient expert report three days after the parties' agreed-upon deadline and before Defendant's own expert witness disclosures were due. With relatively minor adjustments to the Case Management Order, Defendant will have ample time to obtain the required information, depose Dr. Gornet, and obtain its own experts. As to the third factor, the Court finds that allowing Dr. Gornet to testify would not disrupt the order or efficiency of the trial, which is not set to occur for more than eight months. Finally, the fourth factor—the importance of the information or testimony—weighs strongly against exclusion. Dr. Gornet's testimony—both as a treating

physician and as an expert who offers opinions about the causation of her accident and her future prognosis—appears to be very important to Plaintiff's case. After weighing all of the relevant factors, the Court finds that Plaintiff's failure to comply with Rule 26(a)(2)(B) was harmless under the circumstances and the harsh remedy of exclusion is not warranted. *See, e.g., Evans as Tr. for Evans v. Krook*, No. 20-CV-2474 (MJD/ECW), 2023 WL 4373915, at *23-*25 (D. Minn. July 6, 2023) (finding expert's report failed to comply with Rule 26(a)(2)(B) but declining to exclude the expert's testimony where relevant factors weighed against exclusion); *Hawkins v. Dollar Tree, Inc.,* No. 4:19-CV-02954-MTS, 2020 WL 6703279, at *2 (E.D. Mo. Nov. 13, 2020) (finding Plaintiff's failure to provide an expert report for a treating physician who offered opinions on causation violated Rule 26(a)(2)(B) but finding exclusion was not warranted because the failure was "harmless and easily remedied"); *Substation K, Inc. v. Kansas City Power & Light Co.*, No. 4:19-CV-00031-SRB, 2020 WL 2507344, at *1 (W.D. Mo. Jan. 6, 2020) (sanction of exclusion was not warranted even for "remarkably inadequate expert designation and report" where relevant factors weighed against exclusion).

Although the Court will not exclude Dr. Gornet's testimony, the Court finds that Plaintiff's failure to comply with Rule 26(a)(2)(B) and the Case Management Order warrants a lesser sanction. In Defendant's Reply, as alternative relief, Defendant asks, *inter alia*, that the Court award Defendant its "reasonable fees and costs associated with filing the Motion to Strike and this Reply, and all appearances associated with same." Def.'s Reply, Doc. 41, at 6. The Court finds that this is likely the appropriate sanction under the circumstances.[6] However, the Court finds it necessary to give Plaintiff an opportunity to be heard prior to imposing this sanction. *See* Fed. R.

---

[6] Defendant also requests, as alternative relief, that the Court restrict Dr. Gornet's permissible scope of expert testimony and require Plaintiff to produce Dr. Gornet for deposition at Plaintiff's expense. The Court does not find these sanctions appropriate.

Civ. P. 37(c)(1) (allowing sanction of fees and costs caused by failure to disclose "on motion and after giving an opportunity to be heard"). Thus, the Court will give Defendant a brief deadline for filing a motion requesting and documenting these reasonable fees and costs and will give Plaintiff a brief deadline for filing any response to those fees and costs. The Court will also give Plaintiff twenty-one days from the date of this order to supplement her Rule 26 disclosures and provide a supplemental expert report from Dr. Gornet that complies with Rule 26(a)(2)(B). Finally, the Court will extend the remaining deadlines in the Case Management Order to give Defendant adequate time to depose Dr. Gornet and disclose its own experts. These sanctions are consistent with approaches taken by other district courts under similar circumstances. *See, e.g.*, *Hawkins*, 2020 WL 6703279, at *2 (finding Plaintiff's failure to provide an expert report for a treating physician who offered opinions on causation violated Rule 26(a)(2)(B) but finding the failure was "harmless and easily remedied"; declining to exclude the expert's testimony and ordering the plaintiff to update her Rule 26 disclosures, provide a written report, make the physician available for a second deposition, and pay the defendant's reasonable expenses caused by the violation of Rule 26(a)(2)(B)).

### III.    Conclusion

For all of the above reasons, Defendant's Motion to Strike Plaintiff's Expert Witness Dr. Matthew Gornet (Doc. 25) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff shall, within **twenty-one (21) days** of the date of this Memorandum and Order, supplement her Rule 26 disclosures and provide a supplemental expert report from Dr. Gornet that fully complies with Rule 26(a)(2)(B).

**IT IS FURTHER ORDERED** that, within **fourteen (14) days** of the date of this Memorandum and Order, Defendant shall file a motion for reasonable fees and costs documenting

the fees and costs associated with filing the Motion to Strike and Reply and associated appearances. Plaintiff's response to Defendant's motion for fees and costs shall be filed no later than **<u>fourteen (14) days</u>** after Defendant's motion is filed.

**IT IS FURTHER ORDERED** that the no later than **<u>fourteen (14) days</u>** from the date of this Memorandum and Order, the parties shall meet and confer and shall file a Joint Proposed Scheduling Plan proposing new deadlines for a Second Amended Case Management Order. Upon receipt of the Joint Proposed Scheduling Plan, the Court will decide whether a scheduling conference is necessary before entering a Second Amended Case Management Order.

SHIRLEY P. MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 5th day of December, 2023.